## THE G. R. CROWE. *

### (Circuit Court of Appeals, Second Circuit. December 3, 1923.)

### No. 41.

1. Shipping ⬪⟾42—Vessel held unseaworthy, where leakage of oil was due to defective tanks.
   Where a leakage of 11 per cent. of a cargo of oil was due to the fact that the oil tanks were defective, the vessel was unseaworthy.

2. Shipping ⬪⟾42—Charter party held to exempt steamer from liability for leakage.
   In a charter of a tank steamer for transportation of a cargo of oil containing a general warranty of seaworthiness, a further clause that "the steamer is not to be accountable for leakage" *held* to modify the general warranty and to relieve the steamer from liability for leakage.

3. Shipping ⬪⟾140—Harter Act prohibits limiting liability for negligence not applicable to charter of full capacity of ship; "common carrier;" "bill of lading or shipping document."
   A charter is not a "bill of lading or shipping document," within Harter Act, §§ 1, 2 (Comp. St. §§ 8029, 8030), prohibiting inserting in any "bill of lading or shipping document" covering shipments between ports of the United States and foreign ports any clause limiting liability for negligence, and that act has no application to a charter party giving to charterer the full capacity of the ship. In such a case, owner is not a "common carrier," but a bailee to transport as a private carrier for hire.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bill of Lading; Common Carrier.]

4. Shipping ⬪⟾106—Bill of lading issued by master to charterer contracting for full capacity of ship held merely receipt.
   A bill of lading issued by a master to a charterer, who has contracted for the full capacity of the ship, is merely a receipt, and not a contract.

5. Shipping ⬪⟾35—Master not authorized to alter charter by bill of lading.
   The master is not authorized to change or modify the charter by a bill of lading.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by the Anglo American Oil Company, Inc., against the British tank steamship G. R. Crowe, her engines, etc., with which R. J. Green was claimant. Decree for claimant (287 Fed. 426), and libelant appeals. Affirmed.

Appeal from a decree dismissing the libel.

The action was brought to recover for the loss of gas oil shipped in bulk, during August, 1916, on the British tank steamer G. R. Crowe from Philadelphia, Pa., for delivery at the port of London, England. The Crowe was operating under a voyage charter party, dated July 31, 1916, between the Montezuma Transportation Company, owner of the vessel, and libelant, owner of the cargo. Bills of lading were also signed by the master.

The vessel sailed from Philadelphia, on August 22, 1916, with a cargo of 3,539 tons and 1,510 pounds of gas oil, the property of the libelant, and arrived at London on September 14, 1916, and there made delivery of only 3,-119.3 tons, or a shortage of about 420 tons; that is, more than 11 per cent. of the total shipment. Under article 1 of the charter party, the owners warranted that the steamer was "tight, staunch, and strong, and every way fitted for the voyage, and to be maintained in such condition during the voyage, perils of the sea excepted. * * *"

⬪⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 44 Sup. Ct. 335, 68 L. Ed. ——.

Libelant urged in the District Court that there was a breach of this warranty, and that the carrier was liable for the loss of the oil caused by the unfitness of the vessel. The contention of claimant was that the vessel was excused by reason of the exception of "leakage" contained in article 16 of the charter party, which reads as follows: "The captain is bound to clean the tanks, pipes, and pumps of the steamer to the satisfaction of the charterer's inspector. The steamer is not to be responsible for any consequences arising through charterer's shipping different kinds of oil. The steamer is not to be accountable for leakage."

The court held that article 16 of the charter party was not "in any way consistent with the general warranty of fitness," and that "it either modifies the warranty or is to be struck out as meaningless," and dismissed the libel on that ground, viz. that the "leakage" clause operated to excuse the loss notwithstanding the warranty.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (W. H. McGrann, of New York City, of counsel), for appellant.

Burlingham, Veeder, Masten & Fearey, of New York City (Roscoe H. Hupper and William J. Dean, both of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges

MAYER, Circuit Judge (after stating the facts as above). The essential features of the case are stated in the opinion of Judge Ward below.

[1] As there is argument here that the vessel was not seaworthy, we state at the outset that we are satisfied that she was unseaworthy, within the definition of The Southwark, 191 U. S. 1, 24 Sup. Ct. 1, 48 L. Ed. 65, for manifestly, on the evidence, the leakage of about 11 per cent. was due to the fact that the oil tanks were defective. Thus we are brought to the two principal contentions of appellant.

[2] 1. Whether article 16 modifies the warranty of article 1 presents a familiar problem; i. e., of determining whether article 16 is or is not consistent with article 1. While the captain was bound to clean the tanks to the satisfaction of charterer's inspector, the provision that "the steamer is not accountable for leakage" was clearly not an additional precaution, as in Church Cooperage Co. v. Pinkney, 170 Fed. 266, 95 C. C. A. 462, but was a modification of or an exception to the warranty of seaworthiness. As leakage was the proximate cause of the loss complained of by libelant, the vessel, because of article 16, cannot be held liable unless the charter party comes within sections 1 and 2 of the Harter Act (Comp. St. §§ 8029, 8030).

[3] 2. It is strongly urged by appellant that the sections, supra, of the Harter Act apply to a contract, as here, of private carriage. These sections are as follows:

"Section 1. It shall not be lawful for the manager, agent, master, or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby it, he, or they shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care or proper delivery of any and all lawful merchandise or property committed to its or their charge. Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect.

"Sec. 2. It shall not be lawful for any vessel transporting merchandise or property from or between ports of the United States of America and foreign ports, her owner, master, agent or manager, to insert in any bill of lading or shipping document any covenant or agreement whereby the obligations of the owner or owners of said vessel to exercise due diligence, properly equip, man, provision and outfit said vessel, and to make said vessel seaworthy and capable of performing her intended voyage, or whereby the obligations of the master, officers, agents, or servants to carefully handle and stow her cargo and to care for and properly deliver same, shall in any wise be lessened, weakened, or avoided."

The Harter Act was not incorporated in the charter party; but, of course, if applicable, that would be immaterial, because the act would be read into the contract. The bill of lading, however, contained the provision that:

"This shipment is subject to all terms and provisions of  *  *  *  the act of Congress  *  *  *  approved on the 13th day of February 1893."

[4, 5] The suit at bar, however, was not brought upon the bill of lading; but a suit thus brought would not have helped libelant, because, where a bill of lading is issued by the master to a charterer, who has contracted for the full capacity of the ship, such bill of lading is merely a receipt, and not a contract, and, in any event, in such circumstances, the master would not have authority to change or modify the charter by a bill of lading. The Fri, 154 Fed. 333, 83 C. C. A. 205.

In sections 1 and 2, supra, it will be noted that the reference is solely to "any bill of lading or shipping document" and a charter is neither. These sections manifestly refer to common carriers, and were enacted to prevent owners of vessels from imposing self-exculpatory terms which were unjust to shippers.

In The Fri, supra, the voyage was from Carthagena, Columbia, to Cienfugos, Cuba. The court said (154 Fed. at page 338, 83 C. C. A. 210):

"In this case, however, a common carrier was not a party to the contract. When a charter party gives to the charterer the full capacity of the ship, the owner is not a common carrier, but a bailee to transport as a private carrier for hire.  *  *  *  It has not yet been decided by any court that a condition in such a contract, to which the Harter Act has no application, relieving a shipowner from liability on account of the carelessness of its employees, is contrary to public policy."

The words "such a contract" clearly referred to a charter party which gave the charterer the full capacity of the ship, and were not intended to mean a charter party for a voyage between two foreign ports. Whether or not for the purposes of the case the quotation, supra, was dictum, it nevertheless stated the law.

The history and purpose of the Harter Act confirms this view. See The Delaware, 161 U. S. 459, 470–474, 16 Sup. Ct. 516, 40 L. Ed. 771, and Knott v. Botany Mills, 179 U. S. 69, 76, 21 Sup. Ct. 30, 45 L. Ed. 90. Many other cases, such as The Silvia, 171 U. S. 462, 19 Sup. Ct. 7, 43 L. Ed. 241, have been cited, which deal with the third section of the act, but they are not in point upon the question now presented.

We think the language of sections 1 and 2 so clearly does not comprehend a case of a private carrier, and so clearly relates to the duties of a common carrier, that, in the absence of controlling authority to the contrary, we need do no more than to read these sections of the statute to sustain the conclusion of the court below in that respect.

Decree affirmed, with costs.