## THE FORT GAINES.

District Court, D. Maryland.    February 16, 1928.

No. 1448.

**1. Shipping ⚖️133—Cargo owner held entitled to lien on vessel for any unjustifiable loss or damage to cargo.**

Cargo owner, who chartered vessel under time charter, under which possession and control of vessel were reserved to owner, was entitled to lien on vessel for any unjustifiable loss or damage to his cargo, under the rule that vessel is bound to cargo, and cargo to vessel.

**2. Shipping ⚖️132(1)—Libel against vessel for damages to cargo was properly brought in name of cargo owner, for benefit of insurer.**

Libel against vessel for damages to cargo, due to vessel's unseaworthiness, was properly brought in name of cargo owner for benefit of insurer, who was subrogated to cargo owner's rights and was real party in interest.

**3. Shipping ⚖️138—Statute authorizing shipowner using diligence to protect himself from liability for latent defects does not of itself reduce shipowner's obligation to one merely to use due diligence (Harter Act, § 2 [46 USCA § 191]).**

Harter Act, § 2 (46 USCA § 191; Comp. St. § 8030), authorizing shipowner, by terms of contract of shipment, to protect himself from liability for defects not discoverable by use of due diligence, if he has used due diligence at every stage of the voyage, does not proprio vigore reduce shipowner's obligation to one merely to use due diligence.

**4. Shipping ⚖️137—Where neither charter party nor bill of lading limited shipowner's liability, warranty of seaworthiness was absolute (Harter Act, § 2 [46 USCA § 191]).**

Where neither the time charter party nor bill of lading contained any provisions restricting shipowner's liability, owner's warranty of seaworthiness of the vessel was absolute, and it was immaterial, as respects shipowner's liability for damages to cargo, whether unseaworthi-

24 F.(2d)—54

ness was latent, within Harter Act, § 2 (46 USCA § 191; Comp. St. § 8030).

**5. Shipping ⚖️136—Statute authorizing shipowner using due diligence to exempt himself from liability for latent defects applies to common carriers only (Harter Act, § 2 [46 USCA § 191]).**

Where vessel was chartered under time charter for its full capacity as a private and not a common carrier, Harter Act, § 2 (46 USCA § 191; Comp. St. § 8030), authorizing shipowner exercising due diligence to protect himself in contract of shipment against liability for defects not discoverable by due diligence, did not apply; such section being applicable to common carriers only.

**6. Shipping ⚖️132(5½)—Evidence held not to sustain burden on vessel owner of proving due diligence to render vessel seaworthy, so as to escape liability for cargo damage (Harter Act, § 3 [46 USCA § 192]).**

On libel against vessel for damages to cargo of bananas, due to delay in transportation caused by vessel's unseaworthiness, evidence held not to sustain burden on vessel owner of proving that he used due diligence to render vessel seaworthy, so as to be exempt from liability under Harter Act, § 3 (46 USCA § 192; Comp. St. § 8031).

**7. Shipping ⚖️138—Statute exempting from liability shipowner using diligence in furnishing seaworthy vessel applies to difficulties arising after commencement of voyage (Harter Act, § 3 [46 USCA § 192]).**

Harter Act, § 3 (46 USCA § 192; Comp. St. § 8031), providing that, if shipowner has used due diligence in furnishing seaworthy vessel, he will not be liable for faults or errors in navigation, acts of God, or certain other enumerated contingencies, applies to difficulties arising after voyage has begun.

**8. Shipping ⚖️132(3)—Defect is presumed to have existed before voyage was commenced, where breakdown of vessel's machinery occurred at commencement of voyage (Harter Act, § 3 [46 USCA § 192]).**

Where breakdown of vessel's machinery occurred at the very commencement of the voyage, there was a presumption that the defect existed before the voyage commenced, as respects liability of owner under Harter Act, § 3 (46 USCA § 192; Comp. St. § 8031).

**9. Shipping ⚖️137—Breakdown of vessel's machinery at commencement of voyage held not to entitle owner to exemption from liability; "fault or error in navigation or management of the vessel" (Harter Act § 3 [46 USCA § 192]).**

Where there was no showing that weather conditions were abnormal, breakdown of vessel's machinery occurring at commencement of voyage could not be classified as "fault or error in navigation or management of the vessel," within Harter Act, § 3 (46 USCA § 192; Comp. St. § 8031), exempting shipowner using due diligence in furnishing seaworthy vessel from liability for faults or errors in navigation, acts of God, or other enumerated contingencies.

**10. Shipping ⊚➞125—High degree of diligence was required of vessel under fruit trade charter, and vessel owner was liable for any negligence retarding voyage and causing cargo deterioration.**

Where carriage of bananas was expressly called for in time charter party, high degree of diligence was required on the part of the vessel, and for any negligence, retarding the voyage and causing deterioration of the cargo, vessel owner was liable, without cargo owner showing that cargo was improperly stowed or handled; it being sufficient if any inexcusable delay, however slight, caused the deterioration.

**11. Shipping ⊚➞125—One day's delay in transporting bananas from Jamaica to Baltimore held unjustified, and vessel owner was liable therefor.**

Delay of approximately one day in transporting cargo of bananas from Jamaica to Baltimore, caused by unseaworthiness of vessel, consisting of breakdown of machinery, *held* unjustified, and, being proximate cause of deterioration of the bananas, vessel owner was liable.

In Admiralty. Libel by Antonio Lanasa against the steamship Fort Gaines. Decree for libelant.

See, also, 18 F.(2d) 413; 21 F.(2d) 865.

Janney, Ober, Slingluff & Williams, of Baltimore, Md., for libelant.

Washington Bowie, Jr., of Baltimore, Md., for respondent.

COLEMAN, District Judge. This is a libel against the steamship Fort Gaines to recover for damage to a cargo of bananas, due to the vessel's alleged unseaworthiness.

Libelant had chartered the Fort Gaines under a time charter, by the terms of which possession and control were reserved to the owner. On March 31, 1926, one Goff shipped on board the vessel at Port Antonio, Jamaica, 24,164 bunches of bananas, consigned to libelant at Baltimore. At the very commencement of the voyage a shaft operating the centrifugal pump of the condenser broke, rendering the vessel unable to proceed. Replacement of this shaft occasioned a delay of some 19 hours. Thereafter, the voyage having been resumed, more trouble from the same source necessitated a further delay of approximately one hour. As a result of these difficulties, the vessel arrived at Baltimore about 24 hours behind her normal schedule. It appears that the fruit, when placed on board, was in proper condition for such voyage, but that upon arrival at Baltimore it was found to be overripe, causing loss to libelant. It was further testified that bananas may ripen very quickly —under certain conditions in the space of six or seven hours—and the contention here is that the 24-hour delay was responsible for their deteriorated state when they reached Baltimore.

[1] In overruling respondent's exceptions to the libel in this case, this court held that the shipowner was under the duty to furnish a seaworthy vessel, whether he be regarded as a private or common carrier, and therefore that he should put libelant to proof of unseaworthiness rather than except to the libel. The Fort Gaines (D. C.) 21 F. (2d) 865. There can be no doubt but that libelant is entitled to a lien upon the vessel for any unjustifiable loss or damage to his cargo, under the well-established rule that the vessel is bound to the cargo and the cargo to the vessel. The Maggie Hammond, 9 Wall. 435, 19 L. Ed. 772; Pearce v. The Thomas Newton (D. C.) 41 F. 106.

[2] As to respondent's contention that the court should not entertain the present suit, because brought in the name of libelant, who, it is admitted, has no longer any interest in the cargo, the court finds this to be without merit. It is admitted that the company which insured the cargo is the real party in interest, and it is well recognized that in such case suit may properly be brought in the name of the cargo owner for the benefit of the insurer, who is subrogated to the cargo owner's rights. Eastfield S. S. Co. v. McKeon (D. C.) 186 F. 357; Luckenbach v. McCahan Sugar Refining Co., 248 U. S. 139, 39 S. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522.

[3] The effect of the Harter Act is to provide, in section 2 (46 USCA § 191; Comp. St. § 8030), that if the shipowner has used due diligence at every stage of the voyage, not merely at the beginning, to provide a seaworthy vessel, then he may, by the terms of the contract of shipment, protect himself from liability for defects that may not be discoverable by the use of such diligence. But this section does not proprio vigore reduce the shipowner's obligation to one merely to use due diligence. The Carib Prince, 170 U. S. 658, 18 S. Ct. 753, 42 L. Ed. 1181; The Indrapura (C. C. A.) 190 F. 711; The Willdomino (C. C. A.) 300 F. 5.

[4] In the present case, neither the charter party nor the bill of lading contains any provision whatsoever restricting liability. The bill of lading is entirely silent on this point, and the charter party merely contains the usual provision that the vessel shall be "tight, staunch, strong, and in every way fitted for the service." The provision (section 3 of the charter party) relating to lost time caused by breakdown of machinery has to do merely with the effect of such loss of

time upon the payment of charter hire, and not with the question of seaworthiness. Whether the defect was a latent one—that is, whether the shipowner has met the burden of proving his due diligence—is immaterial, because here the warranty of seaworthiness is absolute. The Caledonia, 157 U. S. 124, 15 S. Ct. 537, 39 L. Ed. 644; The Edith (C. C. A.) 10 F.(2d) 684; Pan-American Trading Co. v. Franquiz (D. C.) 8 F.(2d) 500.

[5] Moreover, the vessel in the present instance was chartered for its full capacity as a private, not a common, carrier. So in any event section 2 does not apply, because it is applicable to common carriers only. The G. R. Crowe (C. C. A.) 294 F. 506. It therefore follows that, unless some exemption arises by virtue of section 3 of the act (46 USCA § 192; Comp. St. § 8031), which applies to both private and common carriers, the vessel must be liable. The Southwark, 191 U. S. 1, 24 S. Ct. 1, 48 L. Ed. 65; The Willdomino, supra.

[6] Section 3 provides that, if the shipowner has used due diligence in furnishing a seaworthy vessel, he will not be liable for faults or errors in navigation, acts of God, or other enumerated contingencies not here pertinent. It appears that the vessel was surveyed three months before the accident, but there is no affirmative proof that the particular piece of machinery which broke down was then inspected—merely that some repairs were made to the pump. There is no evidence whatsoever of any inspection of the vessel's machinery just prior to the commencement of this particular voyage. In fact, the master admitted that he had made no prior inspection of the shaft, and the chief engineer testified that this kind of accident was such as would be likely to occur; further, that there had been some trouble with the centrifugal pump on a previous occasion; that, nevertheless, the spare shaft which was on board, had never been fitted to the pump, and had to be sent to a machine shop in Port Antonio before it could be put in place. From these facts the court must conclude that the vessel owner has not sustained the burden of proving that he used due diligence in rendering the vessel seaworthy. The Nordhvalen (D. C.) 6 F.(2d) 883.

[7-9] All of the difficulties covered by section 3 are such as arise after the voyage has begun. The Silvia, 171 U. S. 462, 19 S. Ct. 7, 43 L. Ed. 241; The Irrawaddy, 171 U. S. 187, 18 S. Ct. 831, 43 L. Ed. 130; The Whitleburn (D. C.) 89 F. 526. In the present case, the breakdown occurred at the very commencement of the voyage, in which event there is a presumption that the defect existed before the voyage commenced. The Southwark, supra; Work v. Leathers, 97 U. S. 379, 24 L. Ed. 1012. Such presumption has not been overcome. Furthermore, the court does not consider that an accident of this sort, occurring as it did, can be classified as a fault or error in navigation or management of the vessel, or otherwise brought within the exceptions in section 3. There is no evidence that weather conditions were abnormal. Therefore the court finds that section 3 affords no defense to the shipowner.

[10] Finally, since the carriage of bananas was expressly called for in the charter party, a high degree of diligence was required on the part of the vessel, and for any negligence, retarding the voyage and causing deterioration of the cargo, the vessel owner is liable. The Fort Morgan (C. C. A.) 284 F. 1. In short, it is not necessary to show that the cargo was improperly stowed or handled. It is sufficient if any inexcusable delay, however slight, caused the deterioration.

[11] The court concludes that the delay of approximately one day was not justified. That this delay was the proximate cause of the bananas deteriorating is also a reasonable conclusion from all the facts—certainly in view of respondent's failure to rebut libelant's claim that the delay was directly injurious to the bananas, by any evidence. Admitting that the vessel may have been justified, because of weather conditions, in closing the hatches, as was testified, there is still a total lack of any proof that such affected the condition of the bananas, one way or the other.

Therefore, upon proof of the actual extent of the deterioration and the amount of loss occasioned thereby, a decree will be entered in favor of libelant for such amount