THE J. B. AUSTIN, JR.

CONTINENTAL GRAIN CO. v. SCOTT BROS. CONST. CO., Inc., et al.

District Court, S. D. New York.   April 30, 1929.

Barry, Wainwright, Thacher & Symmers, of New York City, for libelant.

Macklin, Brown, Lenahan & Speer, of New York City, for claimant.

Hubbell, Taylor, Goodwin & Moser, of Rochester, N. Y., for respondent Scott Bros. Const. Co., Inc.

FRANK J. COLEMAN, District Judge. Libelant was the owner and shipper of a cargo of grain, which was being transported through the Erie Barge Canal on the canalboat Willis E. Knapp, in tow of the tug J. B. Austin, Jr. Respondent William Hallenbeck was the owner of the Willis E. Knapp and the master of the tug J. B. Austin, Jr. He was also the party with whom libelant made the contract of carriage.

During the trial I dismissed the libel as against the Scott Bros. Construction Company, Inc., which was in charge of certain work on the dam. Employees of this company had opened three gates of the dam, thereby increasing the draw. This action, however, had been taken, not on their own initiative, but under the direction of the superintendent of the canal, who was a state official charged with the responsibility of operating that portion of the canal, including the duty of ordering those gates to be opened or shut according to his own judgment. I find (1) that the construction company was in no way responsible for the decision to open the gates, and was under a duty to obey the superintendent's orders; (2) the decision to open the gates was a proper one, and was necessary to protect the canal and adjacent lands, because of the depth of the water; (3) the increased draw caused by the opening of the gates was not such as to make navigation dangerous, if conducted with due care.

As to the steamer J. B. Austin, Jr., and her master, Hallenbeck, I find them both liable. I believe that, if Hallenbeck had been exercising due diligence, he would have been on the lookout for a possible draw at that place. As it was, when he actually was apprised of it, he did not take proper measures to avoid it. The tug had a pushboat on its bow, and had a hawser of 350 feet to the nearest boat in the tow. As it approached the vicinity of the dam, it felt the effect of the draw upon the pushboat, which was ahead of it, and at that time the tug was going very slowly, but immediately put on full speed and steered nearer to the bank away from the draw. It continued and pulled the barges right into the draw, where they were swept out of line, breaking the ropes, and causing the damage above mentioned. I believe that the captain, at the rate he was going when he was first apprised of the draw, could have gotten the barges on the hawser all over to the side of the river, away from the dam, before they came within the effect of the draw, which was not a violent one, though more than ordinary at that point. I think he was remiss in two respects: First, in failing to be on the lookout for just what happened; and, second, in not acting more cautiously after the draw first affected the pushboat, which was ahead of the tug.

It was urged that the Harter Act (46 USCA §§ 190–195) exempts the steamer J. B. Austin, Jr., from liability. It is undisputed that she and the Willis E. Knapp were in all respects seaworthy and properly manned. Respondent Hallenbeck, who was the master of the tug, was not her owner, but was, as he testified, merely the employee of the owner. He was, however, the owner of the barge Knapp, which carried libelant's grain. His business relations with the owner of the tug are not clear. I find his testimony confused and in other respects unsatisfactory on that point. The tug had belonged to his wife, and on her death she gave it to his sister. He testified that the owner paid him a certain salary, and in addition gave him a share of the profits arising from the operation of the tug. He was very vague as to what share he had, and as to other details of their relationship. I am not satisfied that he had any authority to bind the owner of the tug by any contract of carriage. I believe that the contract which he made with plaintiff for the carriage of the grain was made solely as owner of the barge Willis E. Knapp, and not as representative of the owner of the tugboat. Nor am I able to find on this confused record that there was any joint operation of the tug and barge.

It does not appear that the other barges in the tow belonged to him, or that there could be any question in regard to them of joint operation with the owner of the tug or joint contracts of carriage. I believe, therefore, that there was no joint contract of carriage, nor joint operation, and that therefore In re O'Donnell (C. C. A.) 26 F.(2d) 334, does not apply.

Decree is directed for the libelant against the steamer J. B. Austin, Jr., and William Hallenbeck.