## THE JOHN J. GRIMES.

## THE H. E. WISE.

## THE GERALD ARCHAMBAULT (formerly THE JOHN J. GRIMES).

## MARINE TRANSIT CORPORATION v. MATTON et al.

## GRIMES v. MARINE TRANSIT CORPORATION et al.

District Court, E. D. New York.
Jan. 22, 1930.

Macklin, Brown, Lenahan & Speer, of New York City, for the Grimes.

Single & Single, of New York City, for Marine Transit Corporation.

William F. Purdy, of New York City, for the H. E. Wise.

CAMPBELL, District Judge.

The two above-entitled suits were by stipulation tried together, and as they arise out of the same transaction, one opinion will be sufficient.

The barge Gerald Archambault, formerly the barge John J. Grimes, was impleaded in the first above-entitled suit, under the Fifty-Sixth Rule in Admiralty (28 USCA § 723), on the petition of John E. Matton and D. G. Roberts, owners and claimants of the steamtug H. E. Wise.

The steamtug H. E. Wise was impleaded in the second above-entitled suit, under the

Fifty-Sixth Rule in Admiralty, on the petition of Marine Transit Corporation.

On November 15, 1925, the barge Gerald Archambault, formerly the John J. Grimes, was loaded with a cargo of flaxseed, which was in good order and condition when she, with four other barges, were taken in tow by the steamtug H. E. Wise, 69.1 feet long, bound east on the barge canal.

The barges were arranged tandem fashion in two sections, the first consisting of three barges in the order named: R. W. Davis, 101 feet long, W. W. Clute, 101 feet long, and G. T. Barton, 99 feet long. And the second consisting of two barges, in the order named: G. C. Nichols, 108 feet long, and the John J. Grimes, 108 feet long, thus making the Grimes the tail boat of the tow.

On arrival at Lock No. 17, at Little Falls, N. Y., the Wise placed the first section of barges in on the starboard side, which put out lines to the wall of the lock, and then brought in the two barges of the second section and placed them alongside of the port side of the barges of the first section.

The barges of the second section put out lines on the other barges, and by pulling on those lines the barges could be pulled ahead or astern.

It is customary for boats on the starboard side to snub on the wall of the lock, and for boats on the port side to snub on the starboard boats.

The lines from the boats in the lock are placed by the captains of the respective boats, and the lock operator's assistant gives the signal when boats appear to him to be satisfactory.

The tug had no lines on the Nichols, the head boat of the second section, but was made fast alongside the head boat of the first section, and this is the usual way of making fast in the locks. The bow of the Grimes was made fast close up to the stern of the Nichols, the space between them being filled by a block of 12 inches thick. The stern of the Wise was 20 feet ahead of the bow of the Nichols.

The tug does not give signals in the lock; that is done by the assistant lock operator.

As the barges were placed the lines were taut and the stern of the Grimes was even with the stern of the Barton, the last boat in the first tier, which was on the starboard side of the lock, and their sterns were about 6 inches clear of the miter-sill of the block.

The captain of the Grimes told the lock operator that he did not think it safe, but the lock operator did, and the captain of the Grimes relied on his judgment.

There was a post office located on the port side of the lock, and after the boats were made fast the captain of the Grimes went to that post office.

He says that it took about two minutes to go and return, but it seems to me that he underestimated the time and that it took longer.

The lock operator, having determined that the forward boats were not too far over the forward gate and that the stern of the rear boats was 6 inches from the miter-sill, opened the valves one third because of the length of the tow, and the length of the lock being 304 feet from the easterly end to the miter-sill.

The captain of the Grimes, who was then on his boat, signaled the lock tender as the Grimes struck and the valve for the outlet was closed.

■ The captain of the Grimes did not pull her forward with his line, as he might have done when the Grimes set back a short distance, as the water was going out, and his excuse, that he could not pull the two boats out and the tug Wise, seems to be without merit, as the tug Wise was more than 20 feet ahead of the bow of the Nichols, and the lines from the Nichols and the Grimes were made fast to the starboard boats, so that with those lines the Nichols and Grimes might be pulled forward or astern.

From all the testimony and the surrounding circumstances, I believe that the captain of the Grimes returned aboard his boat from the post office just before she struck.

Whatever might be the argument with reference to the Barton, the last boat of the first section on the starboard side of the lock, which had but little room with the two barges ahead of her, and with which we are not concerned, there was at least 20 feet of space in which to move forward the Nichols and the Grimes.

■ The four barges, R. W. Davis, W. W. Clute, G. T. Barton, and G. C. Nichols, were owned by the libelant Marine Transit Corporation; the barge Grimes was operated by it under a charter which amounted to a demise, and the Wise was also operated by the Marine Transit Corporation under a charter which appears to amount to a demise; but in any event, the tug Wise was

operated exclusively while under charter by the witness Fagan, as the manager of the Marine Transit Corporation, all orders and directions being given by him regarding the tow, and the management of the fleet being in his hands.

Therefore, the tug and tow in effect were one ship and there can be no recovery in rem against the tug Wise or the barge Grimes by the libelant Marine Transit Corporation.

■ The tug Wise and the barges were in seaworthy condition and properly manned, equipped, and supplied, and if the captain of either the Grimes or Wise was guilty of negligence, it was an error of navigation, and the Harter Act (46 USCA §§ 190–195), pleaded as a defense by the tug Wise to the claim for damage to the cargo on the Grimes, is a complete defense. Petition of O'Donnell et al. (D. C.) 22 F.(2d) 410.

■ The attempt on the part of the Marine Transit Corporation to now contend that the tug Wise and the barges, or any of them, were not seaworthy, comes too late. If they desired to raise that issue, they should in good faith have raised it on the trial, where it could be met; whereas, in fact, there is not one word of cross-examination tending to show that the tug and barges were unseaworthy.

■ With reference to the barge Grimes, I am unable to find any negligence on the part of the Wise.

There was ample room for the Grimes to have been pulled forward and escape the miter-sill, as there was 20 feet between the Nichols and the tug Wise.

The tug Wise had no lines on the Nichols or the Grimes, and the position in the lock of the Grimes was determined by her captain and the lock operator.

While if the damage complained of was to the Barton, there might be some argument that the Wise placed her in a position of danger, because of the length of the three boats as compared to the length of the lock, but no such question is presented with reference to the Grimes, as the length of the lock was about 20 feet greater than the total of the lengths of the Wise, Nichols, and Grimes.

The captain of the Grimes testified that lines were placed by the Nichols and Grimes on the starboard barges, by which the Nichols and Grimes could be pulled forward or astern, and his excuse that he could not pull forward because of the tug Wise finds no support in the testimony, as the Wise was 20 feet ahead of the Nichols.

The placing of such lines was done by the captains of the barges, and in it the tug Wise had no part.

■ The captain of the Grimes was a competent man, familiar with the customs at the locks, and was charged with the duty of watching her lines (Dailey v. Carroll [C. C. A.] 248 F. 466), and yet, as he says, he saw her going back but did not attempt to pull her forward, the very purpose for which the lines had been placed, nor did he give any signal to any one until she struck the miter-sill.

■ Knowing as he did that the Grimes was made fast in the customary way, and that she could be moved forward or astern by her captain, there does not seem to me to have been negligence on the part of the operator of the lock.

A decree may be entered in the first above-entitled suit in favor of the steamtug H. E. Wise and her claimants against the libelant Marine Transit Corporation, dismissing the libel with costs, and in favor of the barge Gerald Archambault, formerly the barge John J. Grimes, and her claimant dismissing the petition and libel as to them, with costs against John E. Matton and D. G. Roberts, petitioners.

A decree may be entered in the second above-entitled suit in favor of the respondent Marine Transit Corporation against the libelant Emma J. Grimes, dismissing the libel with costs, and in favor of the steamtug H. E. Wise and her claimants, dismissing the petition and libel as to her, with costs against the Marine Transit Corporation, the petitioner.