## SOUTHERN PACIFIC S. S. CO. v. NEW ORLEANS COAL & BISSO TOWBOAT CO., Inc.

No. 18293.

District Court, E. D. Louisiana.

Aug. 8, 1930.

Dart & Dart and Henry P. Dart, Jr., all of New Orleans, La., for libelant.

Spencer, Gidiere, Phelps & Dunbar and Philip S. Gidiere, all of New Orleans, La., for respondent.

BORAH, District Judge.

This is an action by the Southern Pacific Steamship Company against the New Orleans Coal & Bisso Towboat Company, Inc., to recover the damage suffered through the sinking of the steel deck barge known as Barge No. 10. The barge prior to and at the time of her sinking was tied up at libelant's wharf at Algiers in the Mississippi river. On March 17, 1925, there was loaded thereon 1855.59 barrels of fuel oil belonging to the libelant; this amount being in addition to the 100 barrels that was already on board from a previous fueling. On the second morning thereafter the barge sank, causing a loss of 603.68 barrels of the said cargo, of the claimed value of $905.52. The respondent was under a contract with the libelant to furnish a barge and carry to a particular place at an agreed rate of compensation their bunker oil of which the lost barrels constituted a part.

Libelant alleges that the sinking of the barge and the loss of its oil was caused by the barge's unseaworthiness and leaky condition and the failure of respondent, its agents and employees, to exercise proper care in the loading, custody, and care of the oil.

Respondent denies that the barge was unseaworthy, and asserts that it had used due diligence to properly man and equip the barge to make it in all respects seaworthy at

the time; that the sinking was due to some unforeseen and unknown cause for which it is not responsible; that at considerable cost and expense respondent succeeded in raising the barge and in salvaging 1,351.91 barrels of oil; that the barge, after being raised, was found to be tight and staunch and in all respects seaworthy and was immediately put back into service and has since been continuously used without any repairs having been made to it. Thereafter the respondent filed a cross-libel seeking to recover a reasonable compensation for the salvage services which it performed in raising the barge and salvaging 1,351.91 barrels of oil which it thereafter delivered to one of libelant's ships, and which was worth $1.50 a barrel.

The testimony shows that the barge was built with two buoyancy compartments, one at the forward end and one at the after end, and that these buoyancy compartments were separated from the body of the barge, which was given over to cargo, by means of steel water-tight bulkheads. As is customary in all oil-carrying barges of this type, in order to allow for the proper circulation of air, there was constructed at the top of each bulkhead between the deck beams at a point near the deck a small vent about $1\frac{1}{4}$ inches in size.

It further appears that the barge was loaded about two-thirds full on the occasion in question, and that she had an estimated freeboard of 17 or 18 inches forward and 15 inches aft; that a large amount of driftwood accumulated under the rake of her bow which resulted in lifting it up and submerging her stern. The consequence of this was the more she went down by the stern the more the oil in the other compartments gravitated to that end. The barge thus settled by the stern with her bow up in the air and this caused some of the oil to be forced through the vent hole into the buoyancy compartment, which added further in sinking the stern of the barge. By sinking in this manner, the air pressure in the body of the barge forced the gaskets away from the hatches sufficiently to permit the entrance of river water therein. Subsequently the barge was raised, and, being found to be seaworthy and in perfect condition, was immediately put back into service without any repairs being made.

For the libelant it is urged that the situation here presents a case of unexplained sinking, and that the inference as to driftwood does not offer a reasonable explanation; consequently there is a presumption that the barge be deemed unseaworthy. This contention was presented in the case of The America

(D. C.) 174 F. 724, 726, and the court there said:

"The libellant's case rests altogether upon the presumption that because she sank without apparent cause she was necessarily unseaworthy but it does not seem that such a presumption can be of any force in the face of the controlling evidence that the boat was seaworthy."

I am of the opinion that respondent's proof covering the condition of the barge before and after the accident has completely rebutted any presumption that the loss was caused as a result of her unseaworthiness. The only duty which devolved upon the respondent was to furnish a seaworthy barge, and this it did. Being a private carrier, it was not amenable to the provisions of section 1 of the Harter Act (46 USCA § 190). The G. R. Crowe (C. C. A.) 294 F. 506, 1924 A. M. C. p. 5. The barge having sunk from an unforeseen accident, respondent is not liable for any oil which was lost.

The next question to be decided is whether respondent's claim for salvage remuneration is meritorious in view of the circumstances of this case. There can be no doubt that the services performed were salvage services, pure and simple, and it has not been suggested in argument or brief upon what theory this claim should be disallowed. Independent of statute, the fact that salvor and salved vessels belonged to the same owner does not preclude the owner of the salving vessel from recovering salvage against the cargo of the salved vessel, provided the peril which rendered the service necessary did not arise through any breach of the contract of carriage. Gilchrist Transp. Co. v. 110,000 Bushels of No. 1 Northern Wheat (D. C.) 120 F. 432. And now it is provided by statute "that the right to remuneration for assistance or salvage services shall not be affected by common ownership of the vessels rendering and receiving such assistance or salvage services." Act Aug. 1, 1912, § 1, 37 Stat. 242 (46 USCA § 727). No question therefore arises because of the common ownership of the vessels. Having already concluded on the major issue presented that there was no breach of the obligation imposed upon respondent to furnish a seaworthy barge, it is apparent that there remains only for determination the amount that should be awarded in the decree.

I have no doubt that the compensation allowed should be on a basis of percentage of the value of the cargo salved. After care-

fully considering the nature and extent of the services rendered and the circumstances surrounding the performance of the salvage services, my conclusion is that a decree should be entered in favor of respondent, the New Orleans Coal & Bisso Towboat Company for $800, which is approximately 40 per cent. of the value of the salved cargo.

The libel will be dismissed, and a decree entered accordingly in favor of the New Orleans Coal & Bisso Towboat Company, with costs.