### THE ALBERTA M.

### AUTOMOBILE INS. CO. OF HARTFORD, CONN., v. MARINE TRANSIT CORPORATION et al.

### No. 10843.

District Court, E. D. New York.

Feb. 2, 1932.

Macklin, Brown, Lenahan & Speer, of New York City (J. Dudley Eggleston and Carl F. Vander Clute, both of New York City, of counsel), for libelant.

William J. Mahar, of New York City, for respondent.

William F. Purdy, of New York City (Edmund F. Lamb, of New York City, of counsel), for respondent Eugene Graves.

BYERS, District Judge.

On or about November 15, 1925, the Alice was one of three loaded barges being towed from New York City to Middleport, N. Y., on the barge canal, by the tug Alberta M. New Baltimore, on the west shore of the Hudson river, was reached in due course, and there the tow tied up for twenty-four hours, because further progress at that point was difficult by reason of a strong down-river current caused by freshets due to heavy rains or snow, which swelled the streams entering the upper river.

The voyage was resumed, and Barren Island, about 1½ miles north, was reached at an undisclosed hour, on a date not stated in the testimony, and there the tow hung up over night, i. e., the tug made fast to an ice-house in a sort of cove, and the barges strung out astern; at about 4:30 o'clock the following morning, a start was attempted. In getting under way, the tug had to back, and two deckhands were on the stern to handle the hawsers leading to the barges, but they failed to pull them in, and these lines, or one of them, fouled the propeller of the tug; the swift current carried the tow down stream, and the Alice was carried on to the dike at New Baltimore; a hole was stove in her and she sank, causing a total loss of her cargo, namely, 425 tons of sulphur.

The cargo was the property of Niagara Sprayer Company, and was insured by the libelant, which paid the loss on January 27, 1928, taking a receipt in the following form:

"New York, January 27th 1926.

"Received from Lethbridge & Cornwell, Agents, Eighty-eight Hundred and Sixty and 00/100. Dollars In Full Settlement of Total Loss—Cargo—'Alice'—Disaster Nov. 15th, 1925. Cert. #1513/7806 of the Automobile Insurance Company.

"$8860.00          Niagara Sprayer Co., by
                              C. A. McDonald."

The insured had hired the respondent Marine Transit Corporation to make the delivery, and this cause in personam was instituted against it by libel filed February 2, 1928.

Answer was filed May 11, 1928, pleading specially the Harter Act (46 USCA §§ 190–195), and a petition under the rule, implead-

ing the tug and Eugene Graves (because the Transit Corporation had chartered from the latter the barge Alice to carry the said sulphur), alleging that, under the terms of the charter, Graves had agreed to man, equip and operate the barge, and to employ a tug to tow the barge on this voyage.

The answer of Graves was filed July 23, 1928, and admits the furnishing of the barge, and his agreement to procure the tug; also that the tug allowed the tow to go aground, and to become damaged, and that the Alice sank and became a total loss, and that her cargo was damaged.

Process seems not to have issued against the tug, and no claimant is a party to this proceeding.

Graves pleads the Harter Act, and limitation (the barge being of no value at the completion of the voyage, and there being no pending freight).

The bill of lading dated November 3, 1925, is a receipt on board the barge in apparent good order, etc., for account, etc., of "425 tons 1118#" to be delivered in like good order and condition "(the dangers of navigation, fire and collision excepted)" as consigned, etc., upon paying the freight, etc. That is to say, there is no mention of the Harter Act.

Evidence that the barge Alice was seaworthy in all respects, properly manned, and that her lines and all canal equipment were satisfactory, as shown by the Marine Transit Corporation, was not disputed, and the fact therefore is deemed to have been established. The seaworthiness and proper manning of the tug were shown without dispute. A certificate of inspection, dated November 5, 1925, by inspectors from the District of New York is in evidence.

It was stipulated that the Alice and two other barges were under charter to the respondent Marine Transit Corporation, and that the respondent Graves agreed with the latter to secure a tug to do the towing. The testimony shows that Graves engaged the tug Alberta M., the property of one Vredenburgh and operated by him, for the purpose. The terms of the contract between the Transit Corporation and Graves are not in evidence, and it cannot be stated whether Graves, acting as an independent contractor having the entire operation in his own hands, selected the tug; or whether he did that as agent for the Marine Transit Corporation which had retained in its own control the decision as to what tug should be employed in the operation.

It is stated in one of the briefs that Graves paid one-half of his compensation to the tug, for its services, which does not determine whether the tug was doing Graves' work, or the Transit Corporation's.

This distinction is thought to be unimportant, although the negligence was that of the tug and not the barge.

When the Marine Corporation entered into the contract with the owner of the cargo, it was free to use one bottom containing both cargo capacity and power, or to divide these agencies of performance according to its preference. The latter method was chosen. There was no relation between either the tug or the barge, and the owner of the cargo.

It results therefore that the vessels were jointly engaged in the operation of transporting the sulphur from New York to Middleport. In Re O'Donnell (D. C.) 22 F.(2d) 410, affirmed as to this (C. C. A.) 26 F.(2d) 334.

The Marine Transit Corporation therefore was responsible for the failure of either the barge or the tug, unless the law provides a barrier against recovery. It is necessary to determine whether the Marine Transit Corporation as a private carrier, not having written the Harter Act into its bill of lading, can evade liability for the tug's error in navigation.

Before reaching this subject, the libelant argues that In re O'Donnell (C. C. A.) 34 F.(2d) 925, and The J. B. Austin, Jr. (D. C.) 33 F.(2d) 215, stand in the way of recourse to the Harter Act. The first holds that there the barges were not properly manned, and that the tug shared in that fault. Manifestly that result flowed from joint operation, which is here found. The latter decision is based on a distinction between the facts there presented and those in the O'Donnell Case, whereby joint operation was held not to have been shown.

The facts here present are held to be substantially parallel to those in the O'Donnell case, with respect to joint operation.

The applicability of the Harter Act therefore is squarely presented, and must be determined.

The contention that section 3 of the act (46 USCA § 192) does not apply, because not so nominated in the bond, is said to be justified by the following decisions:

The Herkimer (D. C.) 42 F.(2d) 482, 483. There it was decided that the Produce Exchange Charter Party in terms excludes the benefits of section 3 of the Harter Act on the

part of the carrier; also that the Herkimer was at fault. In connection with the first holding, the court observed: "Moreover, the Harter Act does not of its own force apply to a private carrier, and if, as was held in G. R. Crowe (C. C. A.) 294 F. 506, sections 1 and 2 of the Harter Act (46 USCA §§ 190, 191) do not apply automatically to a private carrier, it would be illogical to hold that section 3, in the absence of specific agreement, should apply. See, also, Warner Sugar Refining Co. v. Munson [S. S.] Line (D. C.) 23 F.(2d) 194."

The Circuit Court of Appeals did not agree that the Herkimer was at fault, and reversed upon that ground [52 F.(2d) 41, 44] and at the conclusion of the opinion it is said: "This disposition of the case renders it unnecessary to consider the questions which have been argued as to the application of the Harter Act."

It is clear that the reviewing court might have agreed with the conclusion below, that the Produce Exchange Charter Party in terms provided for the very liability on the carrier's part which section 3 of the Harter Act would otherwise frustrate, without concluding the issue here presented. The language quoted above was not necessary to the decision, but, in deference to the views expressed, the authorities quoted should be examined:

The G. R. Crowe, 294 F. 506 (C. C. A. 2d). This case decides that section 16 of the charter under examination (which was for the full capacity of the ship and constituted the owner a bailee to transport as a private carrier for hire) protected the owner of an unseaworthy ship against a claim for leakage of a cargo of oil. The shipper urged that sections 1 and 2 of the Harter Act (46 USCA §§ 190, 191) applied and, because they restrict the ship owner in contracting away the duty of providing a seaworthy ship, the libel should be sustained. In denying recovery on that theory, the court held that those two sections of the Harter Act did not apply to a private carrier. The charter party did not incorporate the Harter Act, and the bill of lading, which did, was not competent to change the contractual relation of the parties. In the course of its opinion, the court observes that cases dealing with section 3 of the act are not in point upon the question there presented. Thus the precise decision is that sections 1 and 2, not being applicable to a private carrier, would not be read into the charter party.

Warner Sugar Refining Co. v. Munson S. Line (D. C.) 23 F.(2d) 194, decides that the vessel owner must respond for cargo damage due to unseaworthiness, where the contract of carriage, charter party and bill of lading, taken together, disclose that the Harter Act was in terms incorporated into the contractual relations of the parties; the ship carried a full cargo for the charterer, and consequently the vessel was not a common carrier. The court remarks that, because the vessel was not a common carrier, the Harter Act would not of its own force have applied, but the parties were at liberty to make it part of their contract.

In concluding what the contract was, clearly the court was not required to decide what the relations of the parties would have been in the absence of such specific agreement. Nor was there present in that case any necessity for distinguishing between sections 1 and 2 of the Harter Act, on the one hand, and section 3, on the other. The sole basis of decision is that the ship owner had failed to show that it had exercised due diligence to avoid the cause of the damage, which was the breaking of a water pipe.

It is considered that the citations referred to in the opinion in the District Court, in the Herkimer case, do not point inevitably to the view that section 3 of the Harter Act must be incorporated in the bill of lading or shipping document, to be available to a private carrier.

The following decisions, prior to The Herkimer, supra, are to the contrary: Marine Transit Corporation v. The H. E. Wise (D. C.) 57 F.(2d) 321, and Petition of O'Donnell (D. C.) 22 F.(2d) 410.

The language of the statute itself seems not to require that the first three sections shall be governed by one process of reasoning.

Sections 1 and 2 prohibit the inclusion in bills of lading and shipping documents of certain provisions which would subtract from the duties resting upon owners and their agents, masters, etc.; that is, these sections restrict the power to contract away certain responsibilities.

Section 3 provides that, if certain requirements have been complied with, the owner of any vessel shall be free from responsibility for damage or loss.

If the third section of the act were intended to secure its benefits only to those who had expressly contracted for them, it is thought that the statute would have so provided.

In U. S. v. Hamburg Amerikanische Packetfahrt Actien Gesellschaft, 212 F. 40, at page 44, L. R. A. 1917C, 1103, Judge Rogers, writing for the Second Circuit Court of Appeals, in a case in which the limitation statute was drawn into question, made the following observation concerning section 3 of the Harter Act, entirely by way of dictum:

"It will be noticed that the act does not empower the shipowner to secure exemption by contract from liability, but it provides by positive and express enactment that he shall not be liable in certain particulars if he has exercised due diligence in the matters specified."

In The Irrawaddy, 171 U. S. 187, 18 S. Ct. 831, 833, 43 L. Ed. 130, the Supreme Court decided that the ship owner was not entitled to general average contribution as a necessary consequence of section 3 of the Harter Act, and, in commenting upon that section, employed the following language:

"This inequality, of course, operated unfavorably on the American ship owner; and congress thought fit to remove the disadvantage, not by declaring that it should be competent for the owners of vessels to exempt themselves from liability for the faults of the master and crew by stipulations to that effect contained in bills of lading, but by enacting that, if the owners exercised due diligence in making their ships seaworthy and in duly manning and equipping them, there should be no liability for the navigation and management of the ships, however faulty." There seems warrant therefore for the view upon which this decision proceeds, that section 3 of the Harter Act is read into the contract of the parties to this litigation, without specific inclusion by reference in the bill of lading.

That there is a distinction between sections 2 and 3 of the act, in relation to private carriers, was recognized in The Fort Gaines (D. C.) 24 F.(2d) 849; and that section 1 does not apply to private carriers was stated in Southern Pacific S. S. Co. v. New Orleans Coal & Bisso Towboat Co., Inc. (D. C.) 43 F.(2d) 177.

To put the matter quite baldly, it would seem that to exclude private carriers from the provisions of section 3, in the absence of an express contract, would require reading into the act words to the effect that: "'The owner of any vessel,' as provided in Section 3 hereof, shall not apply to a private carrier; and 'the vessel' as therein referred to shall not apply to a vessel engaged in private carriage, unless the bill of lading or shipping document shall in terms incorporate reference to this statute"—a process of amendment which lies beyond the judicial province.

It results that the defense of the Harter Act, as pleaded by the respondent Marine Transit Corporation, has been sustained, which renders unnecessary a consideration of the further question of the status of the libelant by way of subrogation to the rights of the owner of the cargo under the insurance policy under which the loss was paid. It has been assumed for present purposes, but not decided, that such status is complete.

Libel dismissed, with costs, as against respondent Marine Transit Corporation. Petition dismissed, with costs, as against respondent Graves impleaded.

Settle decree on two days' notice.

If findings are desired because the foregoing is insufficient to comply with Admiralty Rule 46½ (28 USCA § 723), the same should contain appropriate recitals as to incorporation and ownership, and should be settled on notice.